Seymour W. James, Jr., Attorney-in-Chief
Adriene Holder, Attorney-in-Charge, Civil Practice
Karen Cacace, Director, Employment Law Unit
Young Woo Lee, Supervising Attorney, Employment Law Unit
Richard Blum, Of Counsel
**THE LEGAL AID SOCIETY**
199 Water Street, Fl. 3
New York, New York 10038
Telephone:  (212) 577-3648

*Attorneys for Luis Quero*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

|  |  |  |
|---|---|---|
| LUIS QUERO, | : | |
| | : | |
| Plaintiff, | : | **Civ.** |
| | : | |
| v. | : | |
| | : | **COMPLAINT** |
| 4260 BROADWAY CONDOMINIUM, THE BOARD | : | |
| OF MANAGERS OF THE 4260 BROADWAY CON- | : | |
| DOMINIUM, as representatives of the unit owners of | : | **JURY TRIAL DEMAND** |
| 4260 Broadway Condominium, and ARGO REAL ES- | : | |
| TATE LLC, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff Luis Quero, for his complaint against defendants 4260 Broadway Condo-

minium, The Board of Managers of the 4260 Broadway Condominium, and Argo Real Estate

LLC alleges as follows:

### INTRODUCTION

1.      Plaintiff Luis Quero ("Mr. Quero" or "Plaintiff") brings this action to re-

cover damages and other relief for violations of federal and state labor laws arising out of his

employment with 4260 Broadway Condominium -- the condominium located at 4260 Broadway,

New York, New York ("the Condominium"); the Board of Managers of the 4260 Broadway Condominium ("the Board"), the organization authorized by the owners of units of the Condominium to act on their behalf; and Argo Realty LLC ("Argo") (together "Defendants").

2.      Plaintiff began his employment with Defendants in or about October 2012 as the superintendent of the Condominium.  He continued working in that job and performing other tasks for Defendants until Defendants' managing agent, Argo, terminated his employment on or about November 6, 2015.

3.      During the period that Plaintiff worked for Defendants, Defendants violated numerous provisions of the Fair Labor Standards Act ("FLSA") and/or the New York Labor Law ("NYLL") by (a) failing to pay Plaintiff at all for overtime work he performed renovating an apartment into which he moved incident to his employment with Defendants; (b) failing to pay Plaintiff at all for other overtime work he performed, for example, repairing the Building's boiler, replacing the lighting in common areas, and cleaning out and renovating the basement of 4260 Broadway; (c) failing to pay "spread of hours" pay for days in which the spread of hours from the start to the finish of his work for Defendants exceeded 10 hours; (d) failing to pay Mr. Quero for all vacation and sick days he had earned; and (e) failing to provide required notices and legally-compliant pay stubs.

### JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the FLSA, 29 U.S.C. § 216, and 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction over Plaintiff's New York state law claims pursuant to 28 U.S.C. § 1367 because those claims are so closely related to Plaintiff's claims under the FLSA that they form part of the same case or controversy.

6.      Defendants are located in New York County, New York.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

8.      Plaintiff Luis Quero currently lives in New York, New York.  At all relevant times, he lived in New York, New York.  During the time he worked for Defendants, Mr. Quero served as the superintendent of the Condominium, and performed other assignments for Defendants.

9.      Defendant Condominium is a condominium located at 4260 Broadway ("the Building"), which also has the address of 160 Wadsworth Avenue.  During the relevant time period, Mr. Quero performed work for the Condominium.

10.      Defendant Board is the board that represents the unit owners and other owners of property in the Building, specifically the Building sponsors and the owners of commercial property in the Building.  During the relevant time period, the Board, acting on behalf of the Condominium, determined the terms and conditions of Mr. Quero's employment with the Condominium and supervised his work both directly and through the Condominium's managing agent.  The Board, through the managing agent, terminated Mr. Quero's employment with Defendants.

11.      During the relevant time, the Condominium and the Board were joint employers of Mr. Quero.

12.      Upon information and belief, at all relevant times, the Condominium was an enterprise engaged in commerce within the meaning of the FLSA in that it (i) had employees

3

engaged in commerce or in the production of goods for commerce, or who handled, sold or otherwise worked on goods or materials that were moved in or produced for commerce and (ii) had an annual gross volume of sales of not less than $500,000.

13.    Argo is a real estate management company that operates throughout the United States and in other countries.  It is registered to do business in New York and its address for service of process is in New York, New York.  Throughout Mr. Quero's employment with the Condominium and the Board, Argo served at the pleasure of the Board as the managing agent for the Condominium.  Argo hired and fired Mr. Quero and processed payroll for Mr. Quero and his staff.  Argo jointly employed Mr. Quero with the Condominium and the Board.

14.    Upon information and belief, at all relevant times, Argo was an enterprise engaged in commerce within the meaning of the FLSA in that it (i) had employees engaged in commerce or in the production of goods for commerce, or who handled, sold or otherwise worked on goods or materials that were moved in or produced for commerce and (ii) had an annual gross volume of sales of not less than $500,000.

### FACTS

**Mr. Quero's Work for Defendants**

15.     From about October 2012 to November 6, 2015, Mr. Quero worked for Defendants as the superintendent of the Building.  As superintendent, he was responsible for the maintenance of the Building, and for overseeing the Building's porters, who cleaned and helped maintain the property of the Building.  As superintendent, Mr. Quero was available to Condominium members at all hours in case of emergencies.

16.    Throughout his employment with Defendants, Mr. Quero's regular work hours were from 8 a.m. to 4 p.m., Monday through Friday.  He was also available to unit owners after hours to assist with emergencies.

17.    In addition to his regularly-scheduled work, Mr. Quero undertook special projects for Defendants at Defendants' request.

18.    For example, because the Building's boiler did not function properly during the heating seasons of 2012-2013, 2013-14, and 2014-15, Mr. Quero spent approximately two hours or more daily outside his regular work hours maintaining and repairing the boiler during those seasons.  This work involved removing hot leaking water from the tubes of the boiler, cleaning up the extra water, allowing the boiler to cool down, restarting and refilling the boiler, and checking to make sure that the heat went up to the necessary temperatures.  In addition, about once a month, in the evening, after his regular work hours, Mr. Quero would open the doors on the back of the boiler to remove all of the dust and debris that had accumulated in the tubes of the boiler and would then restart the boiler.  This special cleaning would take an additional one to two hours.

19.    For a while, whenever Mr. Quero reported problems with the boiler to the managing agent, she would tell him to see what he could do to fix the problem.  She told him there was not money in the budget to hire a company to repair the boiler.  Upon information and belief, the Condominium previously had a specialized company perform repairs on the boiler before Mr. Quero started, but the Condominium did not continue using the company's services after Mr. Quero was hired.

20.    In or about 2014, Mr. Quero worked at night, outside his regular work hours, over the course of two weeks, approximately 25 hours per week, replacing the lighting in

two of the Building's hallways.  This work involved cutting and sealing off old gas pipes, installing a new electrical line, and replacing the old gas fixtures with electrical fixtures.

21.    In or about 2014 to 2015, Mr. Quero spent approximately six months, 3-5 hours per night, outside his regular work hours, five nights per week, cleaning out and undertaking a gut renovation of the basement of the Building.  On the Wadsworth Avenue side of the Building, he installed walls and doors dividing the basement, creating an office space, storage areas, a workshop, and a bathroom, among other spaces.  He also cleaned out a space for installation of an extra water heater as a backup to the boiler.  On the Broadway side of the Building, he cleaned out the basement completely, took out walls to make more space, removed a bathroom to allow the Building to install a new bathroom for the porters, since the plumbing in the old bathroom leaked.  He also repaired two heating systems for the Broadway side of the Building that were located in the basement.

22.    In or about 2015, Mr. Quero and a porter spent approximately a month working after Mr. Quero's regular work hours to do the channeling in the hallways of the Wadsworth Avenue side of the Building.  That work involved opening up walls and carving out a space for electrical wiring in the walls.  He spent about two hours per day, five days per week, for about a month working on that project.  Months later, Mr. Quero and a porter sealed up the walls again.  That work took about three weeks, two hours per day, five days per week.

23.    Later in 2015, Mr. Quero spent about 12 hours installing cameras in the Building after his regular work hours.

24.    In addition to these special projects, from about September to December 2013, Mr. Quero supervised and participated outside his regular work hours in the gut renovation

6

of the Condominium's Apartment 509, the unit that Defendants subsequently had him live in incident to his employment so that he would be available to perform services for the Condominium at any time of day when needed.  Before the renovation was completed, Mr. Quero lived outside the Building.  The Condominium hired contractors to perform the work for this project and required Mr. Quero to supervise the contractors.

25.    Under pressure from the Board to complete the renovation as quickly as possible so that he could live on premises, Mr. Quero personally performed work on the project at night outside his regular work hours.  During the period September to December 2013, Mr. Quero generally worked six to seven nights per week on the apartment, usually from about 4 p.m. to about 11 p.m. with an hour-and-a-half break for dinner.

26.    Among the tasks Mr. Quero himself performed at night on the renovation of Apartment 509 included: installing sheetrock for the walls, installing doors, putting down flooring, putting in the tiles of the kitchen and bathroom, refinishing the plaster on the walls, and putting in the molding of the apartment.

27.    After completion of the renovation, in or about January 2014, Mr. Quero moved into Apartment 509 and lived there, incident to his employment and without having to pay rent, during the remainder of his employment with Defendants.

**Mr. Quero's Pay**

28.    Defendants, through the managing agent, Argo, paid Mr. Quero at the rate of $30 per hour.  Mr. Quero submitted time sheets weekly for himself and the porters under his supervision.  On those time sheets, Mr. Quero reported his regular hours and some overtime hours, for example, time spent responding to emergencies.  In addition, Mr. Quero typically sent Argo's representative for the Condominium emails informing him or her of the hours he worked on special projects, such as the installation of cameras, the channeling of the hallways on the

Wadsworth Avenue side of the Building, the cleaning and renovation of the basement, and the work he performed on the boiler. Defendants did not pay him at all for the hours he worked on those projects.

29.    In addition, Defendants agreed to pay Mr. Quero $7,000 for the project replacing the lighting in two hallways described above. However, they never paid him for that work.

30.    Mr. Quero was never paid for the hours he spent working outside of his regular schedule on the gut renovation of Apartment 509. He reported on this work usually at least twice a week to the Board's president and he took Argo's managing agent for the Condominium on tours of the site typically two or three times per week and identified the work he had done personally. Mr. Quero also reported on his work and on the progress of this project to the Board.

31.    Since the Board was under pressure to have him complete the project as soon as possible, the Board president gave Mr. Quero express permission to do the work that was necessary to complete the renovation as quickly as he could. The managing agent reiterated that instruction regularly during the tours of the site. Mr. Quero did not submit the specific hours he worked on that project because he was told by the managing agent and members of the Board that he would receive a bonus after the completion of the project to compensate him for the work he performed. He did not receive this bonus or any pay for his work renovating Apartment 509.

32.    When Mr. Quero was hired, he was told that he would be entitled to get two weeks of paid vacation each year for the first three years and six days of paid sick leave each year. He was told that if he did not use days of paid vacation or sick leave, that he would be paid for the unused days. Mr. Quero was never paid for two

8

weeks of paid vacation to which he was entitled and did not take in 2015.  Mr. Quero was never paid for about five unused sick days in 2015.

Other Labor Law Violations

33.     When he was hired, Mr. Quero was not given the notification required by NYLL § 195(1).

34.     Mr. Quero's paystubs did not reflect the hours he spent working on the special projects described above.  Therefore, they did not accurately report his hours worked for those time periods, as required by NYLL § 195(3).

### DEMAND FOR JURY TRIAL

35.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury for all issues so triable.

### STATEMENT OF CLAIMS

### First Claim: Minimum Wages Under the FLSA

36.     Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 34 of this complaint as if fully set forth herein.

37.     Throughout the period that he worked at 4260 Broadway, Plaintiff was the employee of the Defendants and those Defendants were his joint employers within the meaning of the FLSA.

38.     Upon information and belief, at all relevant times, Defendants Condominium and Argo were enterprises engaged in commerce within the meaning of the FLSA in that each (i) had employees engaged in commerce or in the production of goods for commerce, or who handled, sold, or otherwise worked on goods or materials that were moved in or produced

9

for commerce by any person; and (ii) had an annual gross volume of sales of not less than $500,000.

39.    At all relevant times, the federal minimum wage was $7.25 per hour.

40.    Defendants failed to pay Plaintiff the lawful minimum hourly wage for all hours worked in violation of the FLSA, 29 U.S.C. § 206(a).

41.    Defendants willfully failed to pay Plaintiff the lawful minimum hourly wage.

42.    Accordingly, pursuant to FLSA, 29 U.S.C. § 216(b), Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages, liquidated damages and his reasonable attorneys' fees and costs of this action.

### Second Claim: Overtime Wages under the FLSA

43.    Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 41 of this complaint as if fully set forth herein.

44.    Throughout the period Plaintiff worked for Defendants, Defendants failed to pay him overtime wages at a rate at least one and one-half times the regular rate of pay for each hour worked in excess of 40 hours per workweek, in violation of the FLSA, 29 U.S.C. § 207.

45.    Defendants willfully failed to pay Plaintiff his overtime wages.

46.    Accordingly, pursuant to the FLSA, 29 U.S.C. § 216(b), Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime wages, liquidated damages and his reasonable attorneys' fees and costs of the action.

## Third Claim: Minimum Wages under the NYLL

47.      Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 45 of this complaint as if fully set forth herein.

48.      Throughout the period that Plaintiff worked for Defendants, Plaintiff was Defendants' employee and Defendants were Plaintiff's employers within the meaning of the NYLL.

49.      During the periods when Mr. Quero was performing work beyond that of the superintendent, including major renovations and repair work, for more than two hours per day or 12 hours per week, Mr. Quero's work was covered by the Minimum Wage Order for Miscellaneous Industries and Occupations, 12 NYCRR Part 142, and not the Minimum Wage Order for the Building Service Industry, 12 NYCRR Part 141.  *See* 12 NYCRR § 141.2-11.

50.      From December 31, 2013 to December 30, 2014, the state minimum wage was $8 per hour.  From December 31, 2014 to December 30, 2015, the state minimum wage was $8.75 per hour.

51.      Throughout the period that Plaintiff performed special projects after hours for Defendants, Defendants failed to pay Plaintiff the lawful minimum hourly wage, in violation of the NYLL and implementing regulations, including but not limited to NYLL § 652 and 12 NYCRR § 142-2.1.

52.      Accordingly, pursuant to NYLL § 663, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages, liquidated damages, pre-judgment interest and his reasonable attorneys' fees and costs of the action.

**Fourth Claim: Overtime Wages under the NYLL**

53.     Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 51 of this complaint as if fully set forth herein.

54.     Throughout the periods that Plaintiff performed special projects for Defendants, Defendants failed to pay Plaintiff overtime wages at a rate of at least one and a half times the regular rate of pay, or at a minimum, one and half times the minimum wage for each hour worked in excess of forty hours per workweek, in violation of the NYLL and implementing regulations, including but not limited to NYLL § 652 and 12 NYCRR § 142-2.2.

55.     Accordingly, pursuant to NYLL § 663, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime wages, liquidated damages, pre-judgment interest, as well as reasonable attorneys' fees and costs of the action.

**Fifth Claim: Spread-of-Hours Pay under NYLL**

56.     Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 54 of this complaint as if fully set forth herein.

57.     During the times when Plaintiff was performing special projects after hours for Defendants, Defendants failed to pay Plaintiff spread of hours wages of an additional hour of pay at the minimum hourly wage for each day Plaintiff had a spread of hours in excess of ten hours, in violation of 12 NYCRR § 142-2.4.

58.     Accordingly, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid spread of hours wages, liquidated damages, pre-judgment interest and his reasonable attorneys' fees and costs of the action.

**Sixth Claim: Failure to Pay Agreed Upon Wages under NYLL**

59.     Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 57 of this complaint as if fully set forth herein.

60.     Defendants violated NYLL § 191 by not paying Plaintiff weekly and for not paying agreed upon wages for special projects, unused vacation time, and unused sick leave at all.

61.     Accordingly, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid spread of hours wages, liquidated damages, pre-judgment interest and his reasonable attorneys' fees and costs of the action.

**Seventh Claim: Wage Statement Violations under NYLL**

62.     Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 60 of this complaint as if fully set forth herein.

63.     Defendants violated NYLL § 195(3) by not providing Plaintiff with accurate pay stubs with every payment of wages.  Specifically, the pay stubs did not accurately report the hours he had worked for Defendants during the applicable pay periods.

64.     Pursuant to NYLL § 198(1-d), Plaintiff is entitled to recover from Defendants damages of $250 per work day for the duration of Defendants' violations of NYLL § 195(3), up to $5,000, and his reasonable attorneys' fees and costs of the action.

**Eighth Claim: Hiring Notice Violations under NYLL**

65.     Plaintiff repeats and realleges the statements set forth in paragraphs 1 through 63 of this complaint as if fully set forth herein.

13

66.     Effective April 9, 2011, NYLL § 195(1)(a) requires that every employer provide its employees in writing in English and in the employee's primary language a notice at the time of hiring with information about the rate of pay and any allowances, among other employment-related information.

67.     When Defendants hired Plaintiff, Defendants violated NYLL § 195(1) by not providing him with a required written notice advising him of his pay rates and bases thereof, any allowances claimed as part of the minimum wage, and other details.

68.     Pursuant to NYLL § 198(1-b), Plaintiff is entitled to recover from Defendants damages of $50 per work day for the duration of Defendants' violations of NYLL § 195(1), up to $5,000, and his reasonable attorneys' fees and costs of the action.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in his favor and against Defendants as follows:

a.     Declaring Defendants' conduct complained of herein to be in violation of the FLSA and NYLL and the respective regulations thereunder;

b.     Awarding Plaintiff unpaid minimum wages due under the FLSA and NYLL;

c.     Awarding Plaintiff unpaid overtime wages due under the FLSA and NYLL;

d.     Awarding Plaintiff unpaid spread-of-hours wages due under the NYLL;

e.     Awarding Plaintiff damages for violations of the notice and wage statement requirements of the NYLL;

f.     Awarding Plaintiff liquidated damages pursuant to the FLSA and NYLL;

g.     Awarding Plaintiff pre-judgment interest;

14

h.      Awarding Plaintiff the costs of this action, together with reasonable attorneys'

fees and costs; and

i.      Awarding Plaintiff such other and further relief as the Court considers just and

proper.


Dated:  New York, New York
        September 15, 2016


                                    Respectfully submitted,

                                    By: /s/ *Richard Blum*
                                    Seymour W. James, Jr., Attorney-in-Chief
                                    Adriene Holder, Attorney-in-Charge, Civil Practice
                                    Karen Cacace, Director, Employment Law Unit
                                    Young Woo Lee, Supervising Attorney, Employment Law Unit
                                    Richard Blum, Of Counsel
                                    **THE LEGAL AID SOCIETY**
                                    199 Water Street
                                    New York, New York 10038
                                    Telephone:  (212) 577-3648

                                    *Attorneys for Plaintiff*

15